The next case is Rob Bryant et al. v. MSPB and the Department of Homeland Security, 2017, 12-41, 43, and 45. Mr. Dowd. Thank you, Your Honor. May it please the Court. My name is Matthew Dowd. I'm here with my co-counsel, Brian Lawler, and as a change of pace from the three previous patent cases, this is an appeal from the MSPB. This case involves three military reservists who experienced workplace harassment based on their military service, and then they experienced the confusion that's associated with board appeal processes, the board process in general, USERA cases in general, and then at least a couple of incorrect statements that were provided by the administrative judge. Based on all of that, below what the appellants tried to do is try to follow the advice given by Administrative Judge Weiss, filed a follow-on USERA appeal. Well, it wasn't the USERA appeal that was suggested. It was a constructive removal act, wasn't it? Correct, Your Honor. Well, I will take issue with that with one point. The exact language that Judge Weiss gave in his opinion referred to a removal action under 5 U.S.C. Section 75. We all know that there is no Section 75. It was clearly referring to Part 75. That was one confusing point, but I think the more important confusing point is that even if he had citation correct, that advice was wrong because at that time, such a case under Title 75 or Part 75 was time-barred. This is the important point. This is at least one important point about this case. The objective was to try to get the constructive removal claims heard. By the time or at the time that Judge Weiss provided that advice, an action, a removal action was not permitted. Under the board rules 1201.22a, you have 30 days to file an action under Part 75. In contrast, though, there are no time limits on USERA. Same section, Subsection B. On top of that confusion, this case is clear that the board clearly changed its law with respect to collateral estoppel. This goes to my earlier point about the confusion. Standing here today, I do think that the board's current procedure in terms of denying a hearing on the merits, if it's clear that the issue is collaterally stopped, is probably correct, but with respect to my clients, the issue was at the time they filed their second USERA case. It wasn't time-barred. They were following the suggestion of Judge Weiss, and there was case law, board case law, that supported this procedure. In particular, what I'm saying is referring to the Parikh case. This is 110 MSPR 295. Can I just ask, before, let's call it the old board procedure, the set of cases that toward the end of the board opinion, the board opinion says we're not going to do that anymore, whatever that is. That had something to do with you can't get rid of a USERA or perhaps comparable whistleblower claim at the jurisdictional threshold. You have to go to the next stage. Did the board in that context indicate that when you got to the next stage, there would be no collateral estoppel, but rather all of the factual issues, even if they had been litigated in an earlier proceeding, would be litigated again afresh? Is that the hearing that the board thought was required? Judge Toronto, I could answer that question in two parts. One, there's no board rule that directly addresses that issue. So my colleagues to the left of me, and even the board itself, in the decision that we're directly appealing today, said, well, you couldn't have offered additional evidence. My first response to that is there's no board rule that says you couldn't. Second response is that it is somewhat inconsistent with USERA in general, which doesn't have any statute of limitations or deadline to file a claim. But more importantly, I think it brings, as a third point, it brings me back to the Perique case. Because when you go and look at that case, page seven or eight of the slip opinion in that case, procedurally, it is almost identical to this case, with the exception that it was a whistleblower claim, individual right of action cause. The board had initially held that the party in that was collaterally stopped because there was a prior decision that they failed to justify, demonstrate jurisdiction with a hearing. Then in the case I'm talking about, the board said that there was an error here because of the collateral estoppel rule, and you have to provide that hearing. And in the very last paragraph of that opinion, the board says that Mr. Perique is or must have a hearing on the merits. And so I would interpret that as saying that you have to actually take evidence and you have to make a decision on the merits. Now, even though exactly the same thing had been done before, in terms of we relied on A.J. Weiss's reference to now that you've actually resigned, you can proceed, the reasonableness of interpreting that to mean you can skip your petition for review to the board for the decision I'm now proceeding in 2014, I guess it is, and do it all over again without any of the normal adjudicatory system collateral estoppel effects. Isn't that a surprising inference to draw? Judge Charanto, I stand here today and I say it's unusual. And that's why I said earlier, I think the board now has it correct, but at the time that this decision was made and our the incorrect information from Judge Weiss, I think that's where you get to the point of understanding why this decision... What is incorrect about that information? From Judge Weiss? Right. I mean, you take it as advice from a lawyer that's counseling their clients, let's proceed in this basis. It just seems to me that Judge Weiss is saying that you did not advance a claim of involuntary discharge. You had the opportunity to do that. And there's various opportunities in this proceeding in which you could have done that. You didn't do it. And now everyone has resigned. And to the extent that you're going to seek any... If you ever decide to seek constructive removals, well, you can do that by under this statute. And so there's a miscitation to the statute, but just I guess you would look at the statutes and note the site. It wouldn't stop you or... With respect, Judge Rand, it would stop us. And that's what stopped us so far because when you read the statute and when you read the board rules, you know that even at the time that Judge Weiss provided that advice, it was wrong because of his time bar. He doesn't have an obligation to provide advice. That's not his role. Judge Rand, I completely agree with that. But if a judge does provide a suggestion in terms of how to proceed with a case. And on top of that, there was also, as my colleague still left... What he does not say is that in so doing, you should abandon the current case and not file a petition for review in this case. He didn't say that, but that's what happened. Correct, Your Honor. And then I think it happened again in the context of a USERRA claim. There is no time bar, and that's part of the purpose of USERRA, to be very liberally construed to protect military reservists who are suffering workplace discrimination or some other adverse employment action. And Judge Serranto, to get... I mean, that may be, but surely USERRA doesn't contemplate, even if it contemplates bringing the claim a long time later without time limit, doesn't contemplate bringing the same claim over and over and over again without any kind of normal collateral estoppel. Your Honor, I generally agree with that. And I think that's correct. Again, that's why the board's correct now. But it goes back to the confusing aspect of word procedure. And I would submit, Your Honor, that in 99 or greater percent of cases, no one would do this. Because if the point is simply to re-litigate the same evidence, or to get the same evidence at an evidentiary hearing, and to get the same decision on the merits, no one would do that. We would appeal. And that's essentially, at the end of the day, that's all we're asking for, is a right to appeal our claims to the full board as a petition for grant parties a right to re-litigate ad infinitum is not really a concern, particularly now that the board is correct. But you did have a USERRA claim, and you were pursuing it, but then that was abandoned, right? Your Honor, we refiled it as based on a constructive discharge claim. The proceeding that gave rise to this footnote that we're talking about from A.J. Weiss, that was abandoned. Correct, Your Honor, in lieu of the second USERRA, but also to directly... And that's by abandoning your claims at that point, they were rendered final. If only if you agree with the government's position about collateral stopping. I mean, that's what happened, right? I mean, you abandoned the claims, you didn't file for petition for review, and as a result of that, that decision was made final. Your Honor, let me add one point to that. And this again goes to the quirkiness of board procedure. Under 5 CFR 1201.118, the board has the authority to reopen any decision at any time. So in terms of a final decision, it is final, but it's not final in the context of jurisdictional final. They don't lose subject matter over the case. And to underscore this, this point really underscores the confusion. But the general notion of finality that's relevant here, isn't it, is the kind of issue preclusion, the collateral estoppel notion of finality. And that occurred once the time for petitioning for review from the, whatever, is it August or a petition? I think it, Your Honor, it does if you basically put aside everything that we're arguing. In terms of the misinformation from the board, the context of no time limit for USERRA claims, and sorry, the misinformation from the board itself. And then the board procedures in terms of the board prior precedent. And really, if we want to do it, and we tried to do that in briefs in terms of a strict collateral estoppel analysis, this change in law, basically the way we look at it is that prior to the change of law, according to board procedure, there's three cases and the pre-case, there was a viable avenue to go forward. It was not often used, but it was viable. Was it ever used? I guess that's the question. Is there a situation where, a, whether USERRA or Whistleblower, where all the facts were tried, adverse decision, no review is taken, you go back and do it again, and you get to the hearing, or a hearing and it is, and it happened that there was a retrial of what had already been tried, and you then get, or you didn't retry it, but you now say, you know, the final shoe has dropped, and I actually got, I actually left the job. But on the second opportunity for appeal, this one taken, the board says, yes, that is now right for our review. And we can review it. Your Honor, with all of those facts of that hypothetical, I'm not aware of a case. But again, I think it goes to the unusualness of our present circumstances. I see that I'm into my rebuttal time. May I preserve it? You may. Thank you, Your Honor. Mr. Garger, is it for the board? Yes. May it please the court. And you're going to take 10 minutes and leave five to the government. That is correct. May it please the court. This, essentially what is happening here is, this is a collateral attack using a second USERRA appeal to attack the decision in the first appeal, which the petitioner said in their second appeal that A.J. Weiss missed the boat. So essentially, rather than follow the notice provided at the end of A.J. Weiss's decision about how to file a petition for review with the board, they filed a second USERRA appeal in which they attacked the decision in the first case. So it's, this is a quintessential case of a collateral attack, using a second appeal as a collateral attack on the decision in the first case. I think Mr. Dowd would, I don't want to put words in his mouth, but does not have to disagree with what you just said in order to assert his position, which is that at least two things were distinctive about the circumstances here. One was that whatever was said at the end of A.J. Weiss's decision, there was something said in, I don't know, page 40, note something that sounded awfully lot, an awful lot like, you've got this other route to complete the process now that for two of you, the last shoe has dropped. Mr. Howe, I guess, had already resigned. And then the other thing that he would say is distinctive is that there was some very confusing background log growing out of Kirkendall decision about having to have a hearing even if you don't have anything new to say about the facts. And taken together, that was kind of a good enough reason to think, let's bring a new proceeding, rely on the old stuff, but then do the appeal after that. So counsel describes this footnote, which is, I think it's on page six of the appendix, as misinformation. But in fact, it's correct. The footnote is correct. There is a possible further avenue of appeal, and the administrative Judge Weiss simply identified it. And he may have obligated to do so. USERA says in the opening provisions that nothing in USERA is intended to in any way limit other rights that employees who also have military service are entitled to. So here is a judge saying, you may have this other right, and identifying it. There's no advice there. He doesn't say, oh, you're going to be time barred, so you should make arguments about good cause. He's not saying, you're going to need different facts. All of that would have been advice. He's just saying, you have a possible further avenue of appeal, and he identifies that. The second thing is, there's this argument about detrimental reliance on the footnote. What's hard to make it the case for detrimental reliance when there's no reliance whatsoever. They didn't file Chapter 75 appeals of constructive removals. They didn't do that. So they didn't rely on the footnote. They filed another USERA appeal stating identical facts, which in their opening brief, they concede that the factual allegations in their second proceeding are repeated verbatim from the first proceeding. They went against the footnote. They did. They didn't follow the footnote. So it's hard to say they relied on the footnote. And it's true that there's no time bar under the MSPB regulations on USERA appeals. You can keep bringing them. But there's no right, there's no entitlement to a second proceeding on the same set of facts. And that's what collateral estoppel is designed to prevent, this repetitiousness of litigation. What was the state of all relevant legal authority before the board adopted its new view that the threshold jurisdictional stage was the right one to apply collateral estoppel to figure out if one needed to go forward? What was the state, and everything that grew out of You went to a hearing. If what you said was exactly, you know, you said, Your Honor, I rely on everything that we've done before. What was clear or not clear about what was supposed to happen? So in that case, the issue preclusion would occur at the hearing stage. So are there cases that said that? I could not find any that got that far. Two of these three cases, in fact, were the petition for review was denied by the board on different grounds. So there was no remand for a meaningless hearing. And the third one didn't go to hearing. So I didn't find one that actually went to a meaningless hearing. But in these other cases, it's possible that there may be an overlap of evidence, but not what we have here, which is a complete overlap of evidence. So I think what this case did was bring to light to the board the flaw in these three decisions, because they're seeing a situation where appellants want to bring the same exact evidence in a second hearing. Mr. Dowd pointed particularly to the decision that begins with the letter P. I forget what it's called. Can you talk about why that doesn't help them? Well, it doesn't... Including what the decision said is... That decision follows... The other two decisions follow the Bokler decision. So I'm not... I wasn't really following what the point was about Kariq, because it came after and follows Bokler. Bokler, all three of these are whistleblower cases, and they all three have the same predicament, which is in the first proceeding, whistleblower proceeding, the appellant made an allegation that they made a protected disclosure, protected under the Whistleblower Protection Act. And they got to a hearing. It was considered non-frivolous, and they got to a hearing. And then at the hearing, they couldn't prove the allegation. And so what the board said in Bokler, which set up this problem, was, well, the issue is different when you're looking at whether it's a non-frivolous allegation. The issue that... The issue decided in the first proceeding was, were they able to prove the allegation by preponderance of the evidence? In the second proceeding, the question to get to a hearing is, is it a non-frivolous allegation? And so in all three cases, they're all three whistleblower cases involving this issue of a disclosure, but it applies to you, Sarah, because as you point out under Kierkegaard, it's similar. Non-frivolous allegations, and they're broadly construed under you, Sarah. There's a liberal standard. So in most cases, it would go to a hearing if it's close enough, if there's some non-frivolous allegations. So these cases set up the problem... So let me just ask. I thought what I just heard was something that sounded actually of evidence. That doesn't preclude you because the standard of proof is different from later asserting the same fact and meeting the threshold non-frivolous allegation standard. Is that all that happened in the earlier cases? That's what happened in the earlier case. Oh, okay. Well, that's a perfectly ordinary matter if that's what happened. A vicious preclusion law is that failure to meet a high burden of proof standard doesn't preclude you from being able to try to meet a lower one. That's true, the lesser burden. But the fact that the board could not disregard the fact that they weren't able to provide evidence to support that allegation. Here we have, again, in the first proceeding, there was a full hearing, and they were unable to prove their allegations. So it's a similar situation. So when they come back with the same evidence, the board can't ignore what happened in the first proceeding and correctly applied issue preclusion. To put it in a different way, if the petitioners got what they wished for here, it would be a hearing on the same evidence. And if they got what they wished for here, they would prevail. So what you would have is a second administrative judge looking at the same exact evidence coming up with different findings and a different conclusion. And that's exactly what issue preclusion is supposed to prevent, which is inconsistent adjudication, inconsistent decisions. And I think this case really brought the problem with those three decisions to light, and that's why the board took this opportunity to overrule those decisions. I would mention one other thing, because there was mention of filing a motion to reopen, and in fact, the petitioners have filed a motion to reopen. They filed it about the same time they filed their reply brief in this court. So that's why we didn't mention it in our response briefs. It came after our response briefs. That's currently pending before the board, and it's an opportunity. They're trying to reopen the decision by Judge Weiss in the first round of MSPB appeals. Thank you, counsel. We'll hear from the government. Mr. Salitro. May it please the courts, Department of Homeland Security respectfully joins the MSPB and asks the It's clear that petitioners cannot prevail on their second set of USERRA actions without a finding that fundamentally contradicts the first administrative Judge Weiss's decision on the first set of USERRA actions. The first set of USERRA actions dealt with the verbatim hostile work environment issue. But look, there is no dispute about what you just said. The dispute is, do they get an appellate, which is to say board review of the initial set of findings? And you said your position is they missed their opportunity and they no longer have an opportunity. Correct, Your Honor. And petitioners do claim that the harm in the footnote, in the reliance on the footnote, is that the petitioner did not have the opportunity to appeal that first AJ Weiss. I don't quite say that. What they say is that partly because of the footnote, which I actually think is a more minor point, but mostly because of the line of cases that the board overruled here, that they kind of thought that they could take this extra step and get review in the second proceeding of the initial AJ findings in the first proceeding. To address the change of law, petitioners try to rely on the change of law exception as articulated in the Dow Chemical case. The change of law exception requires that the first decision was decided by old law. The first decision, the first set of USERRA actions, Judge Weiss's decision did not apply to old collateral estoppel law. So by that very nature, the change of law exception should not apply. All the change of law did was affect when the MSPB would decide the issue of collateral estoppel. And the MSPB is now saying that it can decide collateral estoppel at the jurisdiction stage so it doesn't have to have an empty hearing. And I think it's helpful to think about it in a normal district court setting. If there was a trial that went to verdict before a jury and plaintiffs in a subsequent case on the same issue, defendants filed a motion to dismiss on the basis of res judicata. What the old MSPB law would say is, no, on a motion to dismiss, all we're looking at is whether they stated a legal claim, whether they failed to state a claim. And the jury verdict, that was whether they met their preponderance of the evidence burden. All the MSPB change of law said is that does not make sense because the issue of collateral estoppel, it does not matter what the burden is at that particular pleading stage if all the other elements of collateral estoppel are met. So before this decision, was the board applying collateral estoppel at the hearing stage? Your Honor, that is my understanding. I echo my colleague from the MSPB's statement that I'm not aware of a case that applies it, but if you read the Perique, the Wadawat decision and the trio, the Buckler decision, all that is saying is that the jurisdictional elements are met. The jurisdictional elements are met by simply, and those are all whistleblower cases, that's met by simply alleging a protected disclosure. But there was MSPB precedent for deciding the issue of collateral estoppel at the jurisdictional stage. And the Noble decision actually did decide collateral estoppel at the jurisdictional stage. So even the change of law, which is only a change that deals with when the MSPB can decide the issue of collateral estoppel, but still there was conflicting precedent out there that in the non-whistleblower context, they did decide it at the jurisdictional stage. But I want to, real quick, and I know my time is running out, I want to talk about the appeal, or excuse me, the reopening of the appeal. And my colleague alluded to it. Petitioners state in their motion to reopen that they filed in May of 2017, that should the board reopen this appeal, the appeal to the federal circuit would be mooted and there would be no reason for the court to examine the propriety of the board's application of issue preclusion and the board's decision to change the law. And on page seven of the petitioner's reply brief, petitioners say, and other places in the reply brief, they say that the harm is that they lost their appeal rights. The footnote doesn't deal with whether, as Judge Reyna mentioned, whether petitioners should appeal the first action. And it should be analyzed, not in the collateral estoppel context, but in the context of whether petitioners can establish good cause for filing over 18 months after the decision became final. And that is before the I see that my time is up. Thank you, counsel. Mr. Dowd has a little rebuttal time, about a minute and a quarter. Thank you, your honor. I know I'm the last person standing between y'all and lunch. I will be concise. To address a couple points, so the district court analogy, I think in a way is apt, but also underscores the distinction between board practice and district court practice. I do both. If you get past the motion to dismiss days in district court, you get to develop additional evidence. And in our case, we were satisfied with just getting a second review of the evidence presented. But if you want to take the analogy from district court and apply it to the board practice, if we get past that frivolous allegation stage, we would have had the opportunity to develop additional evidence than what was before Judge Weiss. There's no board rule precluding that. Again, we weren't planning on it, but if it's necessary, we would certainly do that. And that would be the normal practice. Once you get past that, you get through discovery, you develop evidence, and you get a hearing on the merits, as the board said in Parikh. And I'm always disinclined to read from a case, your honor, but I believe it is an important case. And in paragraph 17 of the slip opinion of Parikh, it was a whistleblower case, and this is what the board says. Although the appellant has raised the identical alleged protected disclosure in both appeals, the issue in the earlier action was whether, after a hearing, the appellant proved by preponderant evidence that the disclosure was protected. Similar to what we've done here. The next sentence. The issue in this appeal, however, is whether, on the written record, the appellant has made a non-frivolous allegation that his disclosure was protected. Same posture that we have here. And the board decided, and again, this is the old board law, that once they got past that frivolous allegation stage, they, and I quote, is entitled to a hearing on the merits. And at that point, we would have had the opportunity to develop additional evidence if we had wanted to. And to, I think, add to one of my colleague's points. Am I right in remembering that when you came the second time, this is A.J. Black, do I have the name right? I believe so, your honor. That you were offered the opportunity to establish some events post-dating the August 7th or April 7th or something 2004 hearing date in the last time and you said, we got nothing else. Right, because there was only, your honor, there was only a short window between the time that they were still employed and the time they actually resigned. So there was no additional evidence. So what's the relevance of the possible ability or inability to supplement the record in this case where you didn't seek to supplement the record? We didn't seek to because we didn't believe that it was necessary under current precedent, under current board precedent. And that goes back to Parikh. Now, if the court disagrees and we get a chance to, we certainly would because the administrative judge in the second case was asking if there was any additional relevant evidence to that subsequent time period. It's about a two or three week period. Did you say, but we would like to put on additional evidence as to the earlier time period? No, your honor. And again, because we didn't think it was necessary, what we were trying essentially to do was to get a review of Judge Weiss's decision in accordance with standing precedent from the board. And with that, your honors, I'll rest. Thank you, Mr. Dowd. We'll take the case under advisement. Thank you.